[L. A. No. 4915. Department Two.—July 9, 1919.]

## SARAH M. COLEMAN, Appellant, v. COUNTY OF LOS ANGELES, Respondent.

[1] TAXATION—VOID SALE—RECOVERY OF MONEY PAID—WANT OF AUTHORITY PRIOR TO 1913.—Previous to the amendment of 1913 to subdivision 5 of section 3898 of the Political Code, the purchaser at a tax sale had no remedy against the county or state to recover money paid to the county or state at a tax sale.

[2] ID.—QUIETING TITLE AGAINST VOID TAX DEED—PAYMENT OF TAXES CONDITION PRECEDENT.—In an equitable action or in a statutory action under section 738 of the Code of Civil Procedure brought against the purchaser at a tax sale, if the sale was found to be illegal and void, the court required the owner of the property to pay the taxes legally assessed against the property as a condition precedent to declaring the sale void and clearing the owner's title. This right, however, did not exist where the purchaser was seeking affirmative relief in the action.

[3] ID.—VOID ASSESSMENT—PAYMENT OF TAXES UNNECESSARY CONDITION PRECEDENT.—Where the assessment itself was void as well as the sale, no payment was required from the owner as a condition precedent to the quieting of his title.

[4] ID.—REIMBURSEMENT OF PURCHASER AT VOID TAX SALE—CONSTRUCTION OF CODE AMENDMENT OF 1913.—While the language of subdivision 5 of section 3898 of the Political Code, as amended in 1913,

providing for a refund from the county treasury of that part of the purchase price paid on a void tax sale in excess of the amount for which the purchaser may have been reimbursed for taxes, penalties, and costs by the owner, does not use legal terms with technical accuracy, the statute was intended to cover every decision of a court in a civil action wherein it is adjudged that the purchaser's title is void, whether at law or in equity, and regardless of whether the purchaser is a plaintiff in pursuit of the state's title to the property sold, or a defendant in an action brought by the owner.

[5] ID.—REIMBURSEMENT OF PURCHASER BY PROPERTY OWNER—EXCESS PAID TO COUNTY OVER TAXES — AMOUNT OF REIMBURSEMENT BY COUNTY.—In every instance the purchaser, in whatever form of proceeding the relative rights of the purchaser and the property owner may be litigated, is entitled to be reimbursed by the property owner the full amount of taxes, penalties, and costs paid out and expended by him, to be determined by the court, in pursuit of the state's title to the property so sold. If he thus receives the full amount so expended by him, the amount to be paid by the county would be the difference between the taxes, penalties, and costs paid by and to the purchaser and the amount bid by the purchaser at the time of sale.

[6] ID.—VOID AND VALID TAX LEVIES—RIGHT OF REIMBURSEMENT FOR PAYMENT OF VALID LEVIES.—An adjudication in the action between the owner and the purchaser that the initial assessment and levy were void does not deprive the purchaser of the right to be reimbursed by the property owner for all subsequent tax levies paid which were valid.

[7] ID.—AMOUNT OF REIMBURSEMENT—FIXED BY STATUTE.—The amount to be paid by the county is fixed by the law, and not by the decree in the litigation between the owner and the purchaser at the tax sale.

[8] ID.—CLAIM FOR REIMBURSEMENT—TIME FOR FILING.—The right of the purchaser at a void tax sale to be reimbursed by the county is predicated upon a formal and final adjudication that the title acquired by him at the tax sale was invalid and void, and it follows that the purchaser must either waive his right to appeal, or the time for appeal must expire, or an appeal, if taken, must be determined before the purchaser can claim any refund from the county.

APPEAL from a judgment of the Superior Court of Los Angeles County. Lewis R. Works, Judge. Affirmed.

The facts are stated in the opinion of the court.

Tanner, Odell & Taft for Appellant.

A. J. Hill, County Counsel, and Hugh Gordon, Deputy County Counsel, for Respondent.

WILBUR, J.—In this action, the plaintiff, a purchaser at a sale by the tax collector of Los Angeles County, having been defeated in an action against the owner of the property, seeks to recover from the county the money paid by her to the tax collector as the purchase price thereof. Judgment was rendered against the plaintiff after a general demurrer was sustained to the complaint and she appeals.

The tax sale was conducted under the provisions of section 3897 of the Political Code. This action is based upon subdivision 5 of section 3898 of the Political Code as amended in 1913 (Stats. 1913, p. 560), which is as follows: "Whenever, in any action at law, it shall be determined by a court that the sale and conveyance provided for in this and the preceding section are void for any reason and that the purchaser from the state may not be finally awarded the property so purchased, no decree of the court shall be given declaring a forfeiture of the property until the former owner, or other party in interest, shall have repaid to the purchaser the full amount of taxes, penalties and costs paid out and expended by him, to be determined by the court, in pursuit of the state's title to the property so sold. The said purchaser may also present a claim against the county, in the manner provided by law, for a refund of the amount paid into the county treasury as the purchase price of such property in excess of the amount for which he may have been reimbursed for taxes, penalties, and costs as herein provided, and such excess shall be refunded in accordance with section 3804 of this code."

Plaintiff brought an action to quiet title against the owner of the premises, and in that action it was adjudged that the assessment upon which the sale to the state in 1907 was based was void, and that for that reason the purchaser was not entitled to any reimbursements for taxes, penalties, and costs paid out or expended by her. She, therefore, brought this action against the county for the full amount paid by her at the tax sale, to wit, $516.

The question involved depends upon the proper construction of subdivision 5, section 3898, and particularly the meaning of the last sentence thereof concerning the amount to be paid by the county.

Appellant contends that as she "did not recover anything from the record owners, the whole amount that she had paid to the state was 'in excess' of any amount that she received, and that the code should be liberally construed so as to cover not only a case where the record owner would be compelled to pay taxes lawfully assessed, though otherwise invalid, leaving a balance to be recovered of the state, but also to cover a case where it was impossible for the court to order any amount paid." On the other hand, it is claimed by respondent that the appellant has not brought herself within the meaning of the express provisions of the statute. "It seems conclusive," says the respondent, "that the provision for refund made in this amendment is limited to those cases where particular circumstances existed. First, there must be a decree 'declaring a forfeiture of the property' as against the purchaser of tax sale. Secondly, there shall be a reimbursement by the owner of the amount paid by the said purchaser as taxes, penalties, and costs at such sale. . . . " In considering the effect of the code amendment giving new remedies to the purchaser at a tax sale it is essential to consider the rights and remedies of such purchaser before the enactment of the statute as well as the general scheme of legislation concerning such sales as provided by the amendment of 1913. [1] Previous to this amendment the purchaser at a tax sale had no remedy against the county or state to recover money paid to the county or state at a tax sale. (*Loomis* v. *County of Los Angeles,* 59 Cal. 456; *Brooks* v. *Tulare County,* 117 Cal. 467, [49 Pac. 469]; *Holland* v. *Hotchkiss,* 162 Cal. 366, [L. R. A. 1915C, 492, 123 Pac. 258]; *Moyer* v. *Wilson,* 166 Cal. 261, [135 Pac. 1125].) [2] In an equitable action or in a statutory action under section 738 of the Code of Civil Procedure, brought against the purchaser at the tax sale, if the sale was found to be illegal and void, the court required the owner of the property to pay the taxes legally assessed against the property as a condition precedent to declaring the sale void and clearing the owner's title. (*Holland* v. *Hotchkiss,* 162 Cal. 366, [L. R. A. 1915C, 492, 123 Pac. 258].) This right, however, did not exist where the purchaser was seeking affirmative relief in the action. As was said in *Moyer* v. *Wilson, supra:* "Where the purchaser under a sale which is not effective to pass title proceeds against the owner, the latter may stand upon his strict legal rights, and defend his title without tendering payment

of any tax." **[3]** It was also held that where the assessment itself was void, as well as the sale, that no payment would be required from the owner as a condition precedent to the quieting of his title. In order to determine the proper amount payable by the property owner and by the county to a purchaser, it is also necessary to consider the general scheme for tax sales.

Since 1895 tax sales to individual purchasers for state and county taxes have ceased, all sales being made to the state. For five years the owner is entitled to redeem his property from said sale by paying the original amount of the tax, with penalties and costs, and also all taxes subsequently assessed against the property with penalties. Sales were not made to the state for taxes levied after the first sale. (Pol. Code, secs. 3813, 3814.) After the deed to the state, upon application and authorization, the property would be sold by the tax collector to the highest bidder for cash. "No bid," however, "could be received or accepted at such sale for less than the amount of all the taxes levied upon said property and all costs and penalties for every year delinquent, as shown upon the delinquent rolls for said years to the date of the execution of the deed to the state, and all expenses accrued to the date of the sale, together with interest at seven per cent per annum from the first day of July following the delinquency in each of said years to the date of the sale hereunder, computed upon the aggregate amount of such delinquent taxes, penalties, and costs." (Pol. Code, sec. 3897.) It will be observed, then, that the purchaser not only is required to bid an amount sufficient to pay the particular tax for which the original sale was made five years before the deed, but also every subsequent tax. This requirement that the purchaser pay the taxes assessed for each of five years is particularly significant in view of the rule that where the assessment upon which the sale is based is void the owner will not be required to reimburse the purchaser at the tax sale, for that rule is based upon the principle that the owner should not be compelled to pay a void tax in order to secure his property. Where, however, the tax purchaser has paid off valid tax liens upon the property, the purchaser is equitably entitled to reimbursement for such portion of the taxes paid as were justly chargeable upon the property, regardless of the fact that the particular tax for which the sale was made was void.

In considering the language of subdivision 5 of section 3898 of the Political Code, it should also be observed that in the same statute amending that section, section 3771 of the Political Code was also amended (Stats. 1913, p. 587), so that thereafter, at the end of the five-year period, the property sold to the state five years previously was included in the annual tax collector's sale for delinquent taxes, and this property, instead of being sold or deeded to the state, was sold to private purchasers. This property "which has not been redeemed from the sale made to the state five years previously shall be sold by the tax collector at public auction to the highest bidder for cash in lawful money of the United States; but no bid shall be accepted at such sale for less than the amount of taxes, penalties, and costs due as shown in said advertised list. After such bid has been made and accepted the right of redemption shall cease, except as to the purchaser, who shall have thirty days within which to make redemption as provided in section 3785b of this code, and if not so redeemed or if no sale is had under the provisions of this paragraph, then said property shall be deeded to the state." (Sec. 3771.) It appears, then, that there are two schemes for the sale of property sold to the state five years previously: One, the sale under section 3771 in the ordinary course, by which the purchaser was required to bid sufficient to pay the original tax with penalties, etc., plus whatever amount was necessary in order to make him the highest bidder, and thereby secured a right to redeem the property upon the payment of all taxes subsequently assessed; the other, the scheme under section 3897, by which the purchaser was required to pay, in the first instance, an amount at least sufficient to cover all taxes, etc. Under both of these schemes of sale to individual purchasers the purchaser was required to pay taxes covering the five-year period, with interest, penalties, and costs. In each instance, in order to become the highest bidder, it might be essential that he should pay some amount in excess of such taxes, penalties, and costs. Aside from the possibility, or, we may say, probability, of some defects in the proceedings, as to many of which the deed is made conclusive evidence of regularity, the purchaser secured the absolute fee to the land. The amount of the taxes, penalties, and costs would probably not exceed seven to ten per cent of the value of the property, leaving a margin of ninety per cent of the value to be bid, depending upon the belief of the purchaser

in the validity of the title acquired by him. It is obvious that the amount thus bid would be increased if the purchaser could be assured that if this deed was void he would at least recover the money paid by him. No doubt the amendment in question was adopted to assure the purchaser such reimbursement. The amendment first provides for reimbursement from the property owner, and then provides for a refund from the county treasury of that part of the purchase price "in excess of the amount for which he may have been reimbursed for taxes, penalties, and costs" as therein provided. In determining what the "excess" may be, it is important to consider the provisions of the statute with relation to the amount of reimbursement required to be paid by the property owner to the purchaser.

The introductory phase of the statute "whenever in any action at law" is an apt reference to an action at law as distinguished from an equitable proceeding, but other provisions of the statute are inconsistent with that construction. For instance, the term "decree" is used in referring to decision of the court in the "action at law." "A decree is the judicial decision of a litigated case by a court of equity. . . . It is accurate to use the word 'judgment' as applied to courts of law and decree to courts of equity, although the former term is now used in a larger sense to include both." (Bouvier's Law Dictionary.) "The word 'decree' is peculiarly appropriate to those proceedings in which a plaintiff or a defendant is required to do equity as a condition of securing relief." (Id., Bishop's Equity, sec. 7.) Hence the use of the word "decree" would indicate that in using the phrase "actions at law" the legislature intended to include equitable suits, as well as the common-law forms of action. The term "action" is alone sufficient to include both forms of civil remedies (Code Civ. Proc., sec. 22; *Smith* v. *Richmond,* 19 Cal. 476, 481; *Lux* v. *Haggin,* 69 Cal. 255, 267, [4 Pac. 919, 10 Pac. 674]), and the term "law," of course, in its broad sense includes equity. [4] While the language of the amendment under consideration does not use legal terms with technical accuracy, we are satisfied that the statute was intended to cover every decision of a court in a civil action wherein it is adjudged that the purchaser's title is void, whether at law or in equity, and regardless of whether the purchaser is a plaintiff "in pursuit of the state's title to the property sold" or a defendant in an action brought by the owner. No doubt the phrase "in pursuit of the state's title to

the property sold," as contradistinguished from "the amount
paid at the tax sale," was used in view of the fact that under
the provisions of section 3771 of the Political Code the pur-
chaser at the tax sale was required to pay an added amount
to the purchase price to redeem the property from all sub-
sequent taxes before securing a deed.  [5]  It will be observed,
then, that in every instance the purchaser, in whatever form
of proceeding the relative rights of the purchaser and the
property owner may be litigated, is entitled to be reimbursed
by the property owner "the full amount of taxes, penalties,
and costs paid out and expended by him, to be determined by
the court, in pursuit of the state's title to the property so
sold."   If he thus receives the full amount so expended by
him, the amount to be paid by the county would be the differ-
ence between the taxes, penalties, and costs paid by and to the
purchaser and the amount bid by the purchaser at the time of
sale.   Under the new scheme for the protection of the pur-
chaser at the tax sale it is evident that the primary purpose of
this legislation, so far as the payment by the county is con-
cerned, was to reimburse the purchaser the amount of such ex-
cess paid to the county, over and above the taxes justly due it.
The legislature could not have intended that the county should
refund taxes justly due it.   On the contrary, such taxes were
to be paid by the owner to the purchaser.

There remains to be considered the question whether in the
event that the purchaser fails to recover judgment against the
owner for the taxes, penalties, and costs expended by him, he
can recover from the county such portion of the taxes, penal-
ties, and costs as he thus fails to secure from the property
owner.   The question is of importance in this action as to the
repayment of void tax levies, for it is alleged in the complaint
that in the action between the purchaser and the property
owner it was adjudged that the initial assessment and levy
were void and for that reason the purchaser was refused any
relief.   [6]   This decision was erroneous.   Unless all subse-
quent tax levies paid by her were also void, the purchaser
should have been reimbursed by the property owner for all
valid tax levies paid by her.   In the absence of evidence or
allegation the presumption is that the other four assessments
and tax levies included in the amount required to be paid by
the purchaser at the time of purchase were valid.   It can-
not be ascertained from the complaint whether these four valid

tax levies were less than or in excess of the $516 paid by the purchaser at the tax sale which is now sought to be recovered, for by a proviso in section 3897 of the Political Code, not heretofore mentioned in this opinion, upon proper authorization by the board of supervisors, the tax collector could receive a bid for less than the full amount of all taxes, penalties, and costs levied upon the property. So far as appears from anything alleged in the complaint, the property in question may have been offered in accordance with these provisions at a price less than the total amount of taxes, penalties, and costs levied upon the property, and in that event the sum of $516, for all that appears in the complaint, may have been less than the taxes justly due and legally levied upon said property for the four years subsequent to the levy found by the court to be void. In view of that fact, it is unnecessary to determine in this case whether the amount of a void tax paid by a purchaser and not collected from the owner must be repaid to him by the county under the provisions of section 3898 of the Political Code.

[7] In the foregoing discussion we have assumed, and now hold, that the amount to be paid by the county is fixed by the law, not by the decree in the litigation between the owner and the purchaser at the tax sale. The county is not a party to that litigation. It was no doubt intended that the county should act upon the adjudication of the court so far as the invalidity of the tax sale was concerned, for this is a matter of indifference to the county. But the question as to whether or not the court has therein correctly determined the amount payable from the property owner to the purchaser is one, we think, that is not conclusive upon the county. In other words, we hold that the language of the statute requiring a refund from the county of the portion of the purchase price "in excess of the amount for which he may have been reimbursed for taxes, penalties and costs as herein provided" should be read in effect as though the language were "for which it is herein provided that he shall be reimbursed by the property owner," or "for which he should be reimbursed for taxes, penalties and costs as herein provided." That is to say, we think that the statute itself, rather than the decree of court, fixes the amount to be paid by the county and by the property owner.

[8] Respondent also contends that the demurrer to the complaint was properly sustained, for the reason that the claim against the county upon which the suit is based was filed be-

fore the decree in the action between the purchaser and property owner was entered. It is clear that the right of the purchaser to be reimbursed by the county is predicated upon a formal and final adjudication that the title acquired by him at the tax sale was invalid and void. It follows that the purchaser must either waive his right to appeal, or the time for appeal must expire, or an appeal, if taken, must be determined before the purchaser can claim any refund from the county. It is obvious that under the statute the county should not refund any portion of the money paid by the purchaser until final determination of the right of the purchaser in and to the property in question. For this reason the claim was prematurely filed with the county.

The judgment of the trial court was correct, for the reason that the complaint failed to show any ''excess'' to be refunded by the county within the meaning of the law, and for the further reason that the claim against the county was prematurely filed, and such claim was a necessary prerequisite to the filing of a complaint. (Pol. Code, secs. 3804, 3898.)

The judgment is affirmed.

Melvin, J., and Lennon, J., concurred.